The last case for the morning is 21-4107, Wasatch Transportation v. Forest River. Counsel for Appellant, if you'd make your appearance and proceed, please. Thank you, Your Honors. Matt Evans on behalf of the Plaintiff Appellant in this matter, Wasatch Transportation. My client is a small business that has a transportation company that was awarded a contract from Salt Landing, a bus contract that was 350 miles over a lot of altitude changes and a lot of weather, as Utah has a lot of weather. Your Honors, we are appealing the lower court's granting of summary judgment of all of our claims and we are appealing on three bases. Your Honor, we believe the district court erred when it determined as a matter of law that Mr. Fuller had reviewed the disclaimers in the limited warranty packet. The court found that, concluded that Mr. Fuller had reviewed those prior to ordering the buses in question. We're also appealing the lower court's order finding that Mr. Fuller's subsequent declaration was a sham affidavit. We believe that that was also error and we are also appealing the lower court's decision finding that Wasatch could not reasonably or rightfully rely under any circumstances on the representations made by the Forest River employees when they were looking to buy these buses. We believe that that is error, all of those are error and we're asking the court to reverse the lower court's decision. As I mentioned to the court, my clients sought to buy three buses from Forest River. They met with several of their employees. The employees, they explained, and that was Mr. Fuller, Ryan Fuller, what the buses were used for this 350 mile back and forth bus route that they had been awarded. They explained the altitude, they explained the weather conditions, responses from employees were that this was a perfect fit, that these buses would be right for this bus route. The reality was that these buses are not right. There are several latent defects as our expert has testified or at least provided a report regarding the buses. In addition, these individuals and employees, or at least Forest River, knew that the Synergy buses had substantial defects. In fact, it was quite a bit of a joke of the Synergy buses where also representations were made that these were the highest quality of the buses that they sold, which was absolutely not true. In fact, the record shows that they wouldn't even sell these buses to some of their best customers including Greyhound because of the serious repair problems. Mr. Evans, let me ask you sort of a high level question in terms of at a level of generality. Is your first argument of error and your second argument of error, they are tied together essentially, right? Yes. Okay. Now, the third argument conceivably is also tied together. There may be other, I think the district court had other grounds for which it found that you could not proceed on reasonable reliance grounds, but the first two at least are clearly tied together, right? Yes, they are. I think you're absolutely right. I think the third issue is a little bit different because you've got reasonable reliance. The gold standard case in Utah talks about that, but there are other cases that we cited in our brief that talk about, well, you've got to go beyond certain statements and look at the totality of the circumstances. So it's a little bit more there. And I think that the court didn't make that analysis at all. And I would say, Your Honor, that we've got a, as I look at this record in the court's ruling, on summary judgment, you look in the facts in a light most favorable to the non-moving party. It looks like the court, the lower court here, has looked at the facts in a light most favorable to the moving party. And the court in its opinion cites to Mr. Fuller's testimony. He never says, oh, yeah, I looked, the employees gave me the packet and showed me the disclaimers. He never says, I read the disclaimers. He said, I looked at brochures, I looked at the website, and I was familiar with the time frame, mileage, and what it covered. Well, what does it cover? Does it cover the engine? Does it cover the chassis? Does it cover those things? He became familiar with himself about those things. But there's no testimony at all on the record that the packets themselves were provided to him for his review. Well, let me give a break, because the judge, I think, credits the testimony that those are the warranties that you reviewed. Nobody's saying that he reviewed those, the warranty packets, you know, before he got on the first of the three buses. But why isn't that an admission, that he had reviewed the warranties? The question is, what did he mean when he said warranties, and that's what the affidavit was for. What did he mean when he said warranties? He read about, well, it's 150,000 miles, it's this many years, what does it cover? What does it cover? Does it cover, like I said, the engine? Does it cover the drivetrain? What does it cover? That doesn't mean that he saw the disclaimers. And the lower court said, well, he said that he reviewed the warranties, so he must have reviewed the packet and the disclaimers, when there's no evidence on the record that he did that. And that's our issue. And if you look in the facts, and the light most favorable to my client, the non-moving party, then you have to see that there are ambiguities in him saying that there were warranties. Well, let me play devil's advocate here with you on that. He also had testified in deposition, and the judge referred to it, that he had already researched and discovered what the warranties covered, and he was happy with it. Right. Now, I know you say that, well, that's the five years, 100,000, the gold standard, the gold warranty, 150,000 miles, but without any qualification, why isn't that an adequate acknowledgment that the content was something that he had already become aware of? He explained in his deposition that he had reviewed the website and he had reviewed brochures, and there's no evidence on the record that the website or the brochures contain those disclaimers. And that's where the ambiguity comes in. Because later in his deposition testimony, he says, yeah, once we had all of these problems with these buses, and they were significant problems, he said, oh, I went and looked at the packet, and that's when I finally saw this language and other things, Your Honor. But that goes to the affidavit, which we're simply, the affidavit is a clarification of his testimony there. It's not, I mean, it's not this unusual circumstance where you just disregard the affidavit as a sham affidavit. Well, help me with the deposition testimony, because I think I'm not following something. There's talk about the warranty packet that he received that, then we brought it to Lewis, and then we have two question answers. And to your knowledge, the warranty packet information was in the other two buses. Answer correct. And you had reviewed all of those warranties prior to ordering the buses. Answer, that's correct. So all of the warranties in the packet, he says that he has reviewed. Prior in his testimony, he testified that he had reviewed the brochures and the website. In this part of the testimony, he says right at the beginning, I think they were in the buses when we picked them up from Glavel, actually. That's his first sentence that he states. And that's after they've signed the order, because they had to do some specialty things to the buses. They've already signed and agreed to pay them. So he says, then, that's when we got this warranty packet. And then the counsel for Fourth River doesn't say, well, did you review the packet? No, he says, and the warranties. He goes back to his prior questions, and he reviews all those warranties, going back to, I had reviewed the website, I had reviewed the brochures, and I was familiar with time, mileage, and what it covered. And so there's an ambiguity there. If you look at it in a light most favorable to the non-moving party, it becomes a question of fact. And that's what our affidavit was for, was to clarify that, to say, no, no, I never intended to say that I read those packets and I read the disclaimers. So let me make sure I understand your position on the third argument. One strain of the district court's opinion, at least as I recall it, would be pretty much contingent on the first, which is, as a matter of law, we conclude that he read the disclaimer, therefore he could not have reasonably relied on the representations that were made. That's one strain. What is your best argument for reversal on the other strain, other argument to suggest he could not have reasonably relied on those representations? Your Honor, if I understand your question right. Let me try it again. Quite apart from, let's assume for the moment we rule against you on the idea that the district court erred in the fact that he had read the disclaimer. Okay, he's read the disclaimer. Does he have a leg to stand on in saying on the reasonable reliance front? If so, what is it? And I understand that question. And yes, he does. And if you look at the gold standard in the case we cited in our brief subsequent to the gold standard, you have to look at the totality of circumstances. So he's read that, but he's also had representations made to him. And if you look at the totality of the circumstances, that doesn't just preclude at all his fraud and misrepresentation claim. And those Utah cases that we cited in our brief say you've got to look at everything. Well, I think the retort would be that those representations were essentially puffery and that they were opinions. These are good trucks, these are fine trucks. I mean, what is it that beyond puffery in the statements that were made that would be useful? There were three that I can point out to you directly today that they were, number one, he made statements to them of what exactly he was going to use them for. And they said it was perfect for that. And I've quoted that. Perfect for that. It was perfect for the route they suggested. Okay, that is a statement of fact that these are fit for your exact purpose when they knew it wasn't. Second, if it's our highest end product. That's not puffery. That's a statement saying it's our highest end. It clearly was not their highest end. They wouldn't sell this to Greyhound. They had all sorts of problems with this. In fact, they laughed about it when they got the report back or statements back from my client about all of the problems they were having about it. It clearly was not their highest end product. Third is this issue that they were an ongoing line. Ongoing line. That's not puffery. That's a statement of fact. And if you look, we have an email from one of the employees talking two months, I don't know, that we have decided to stick with our decision of discontinue building the Synergy. Stick with our decision. We didn't make the decision. They had already made the decision to discontinue building the Synergy. So there are statements of fact that are not puffery at all that my clients relied upon that was reasonable reliance. We believe under the totality of the circumstances regardless of the affidavit issue and the issue of the disclaimers. You know, I would say one thing here that I think is important. If you look at most companies these days, they will sit down with a contract and make you sign an initial saying you have read these and you understand what our disclaimers are and everything else and you initial them and sign them. We don't have that in this circumstance. We have no evidence in the record whatsoever that my clients were given these packets and say read them and understand that there are these disclaimers. We can say whatever we want as we walk around our factory, but at the end of the day, it's all going to be disclaimed in those written agreements. So you guys need to know that. And so, Your Honor, I see I'm almost out of time. I'd like to reserve a minute unless anybody has any questions. Okay. Good morning, Your Honors. May it please the Court. My name is John Papa George. I'm counsel for Forest River, the manufacturer of these three Global buses that is the subject of this litigation. Your Honors, this Court should affirm the entry of summary judgment because Mr. Fuller did, in fact, review the warranty prior to ordering the buses. Judge Phillips, you went straight to the testimony that I was going to read to this Court at page 64 of his deposition where he did, in fact, confirm that he had reviewed all of those warranties prior to ordering the buses, that he had completed homework and research prior to ordering those buses, that he did not speak with an attorney about the warranties. But there's one other critical fact that was not part of this previous discussion with counsel, that on page 76, Mr. Fuller authenticated the warranty. And the warranty that is in this record confirms that the disclaimer that in no event shall be changed. And that is that he did not make any statements by a dealership, salesperson, or agent. How does that help you? There's no question that he reviewed the limited warranty when he got on the first of the three buses. So, yes, he can authenticate that. I don't understand. This argument throws me a little bit. How does that help you? Well, because he testified, again, I think page 64, he testified that he had reviewed all of those warranties prior to ordering the buses. And that ordering process took place in November. You may remember that Mr. Fuller traveled to the factory with a representative from Lewis Bus. He met with Heidi Smart. He met with Phil Hayes. He had discussed the warranty coverage and what the warranties covered in a very broad sense of what they covered. He was happy with his research. And this research process was part of multiple visits to multiple manufacturers. I get all that. I was just really surprised that you would hang your hand on the fact that he authenticated a document that your adversary just got up in his first argument to say, yes, he reviewed it. It's in his opening brief all over. Yes, he reviewed the limited warranty package when he got on the first of the three buses. Yes, it's a genuine document. I understand your question, Your Honor. And I think my point, and maybe I didn't convey it very well, was the fact that he had, in conjunction with reviewing it prior to ordering it, he had then said later in his deposition that he did read it. And I understand your point. He read. OK. Now, tell me where he said that he read when he said, well, tell me where in the summary of the first three buses he could have ever read the content of the limited warranty packet. Where did he ever say that he had read the text of the limited warranty packet? Or that that was even accessible to him? What he said was, as we've talked several times, is he reviewed the warranties. Well, if I get on the computer and I say, I want to buy an Oldsmobile, and I go look in the computer, and they say, yeah, you get a five-year, 100,000-mile warranty, and I'm asked in a deposition, did you review the warranty? Yeah. Was I happy with what it covered? I'd say, yeah. Did I know that it was going to limit my remedy to a repair, that I would have no consequential damages? That's a different kettle of fish. And I think your answer is covered by his testimony at page 64, where I had asked him if he had reviewed all of those warranties prior to ordering the buses. So in November, he's at the factory. He's meeting with Ms. Smart and Mr. Hayes. They're discussing the warranties. And then the buses are manufactured, and Mr. Fuller picks up the first bus, and he acknowledges that the warranty packets are in those buses. And through my questioning, I took him back with that question by saying, and you had those warranties prior to ordering the buses, and he confirmed that he had. Now, why is it at least a plausible interpretation that, yes, he had reviewed the content of those warranties, that it covered five years, 100,000 miles, prior to entering into the sales contract? Why isn't that at least a plausible interpretation? It just strikes me as being like 1,000 depositions that I took as a lawyer. I thought I pinned the witness down until I read the transcript, and then I realized I started, and I didn't ask the right question. So... Judge, I actually remember this specifically in this deposition on that question about where I had asked him reviewing all of those warranties prior to ordering the buses, and he said, that's correct. And Judge, admittedly, I left it alone. Because you thought you had been down. Because my theory was that in cross, that if he was going to say I didn't read the disclaimer, or bring up those issues, he did not. The disclaimer showed, this affidavit now shows up in the summary judgment, had a chance to cross-examine on that issue, which is obviously why we moved to strike it, and the judge, the district court found that it was a sham affidavit, and I still think, and I would do it all over the exact same way I did it, where I had asked him if he had reviewed those warranties, and he said yes. And in the context of, you know, 30 some odd pages of doing research, and speaking with Ms. Smart about the warranties, at the end of the day, I felt like that we had the right question and had gotten the correct answer. And there's one other additional support for affirming the entry of summary judgment beyond whether he saw the disclaimer or didn't see the disclaimer. Clearly the warranty was a benefit of the bargain, and we have cited cases in our brief where, and I think we have several quotes from case law, the Matthews case is a Seventh Circuit case where the Seventh Circuit held that a party, when it relies on a warranty to get repairs done, and then tries to argue that it's unconscionable or they didn't see it. So basically it's the Jacobs case, the buyer cannot have his cake and eat it too. Well, from his standpoint, as the non-movement on the summary judgment, he's saying, well, I didn't take advantage of the limited warranty packet, I took advantage of what Heidi Smart and Phil Hayes orally promised me, a warranty for a fitness for a particular purpose, and that's the warranty that I relied on in getting the buses repaired. Why isn't that at least a genuine issue of material fact that he relied on that oral warranties, those oral warranties for a fitness for a particular purpose, rather than the written limited warranty? First argument would be that oral warranty was disclaimed, which we've already discussed, and then it comes down to the issue of whether he saw it or didn't see it. The second part, though, is, and my argument here is that if a company like Wasatch Transportation is going to take advantage of having warranty repairs done, which were done here, then they also have to sort of, and I have a quote here, eat that part of the cake with the disclaimer language. Well, see, but I think the point that at least I took from what Judge Bacharach was saying is the question of what is the unit of the warranty that you're relying on. In other words, it's one thing to say the temporal period and the mile period, yes, I sought warranty relief in that period. So if I claim there was something unconscionable later about the five-year warranty, then I'd be in trouble, the one under this case law. But if the question is did I ever try to do anything vis-a-vis the limited warranty, and the answer is no, then why are they stopped? Because I think we have to rely on the language from the Matthews case, where in that particular case, plaintiff argued that the terms of the warranty itself were unconscionable, in general. And the court held that if they relied on the contract to have repairs completed, then they cannot argue that it's unconscionable. But they're not claiming that the terms of this warranty were unconscionable. All of them, they're saying this part is problematic. I agree, but I think the parallels are there in the Matthews case, where we can argue here that if you had repairs done to the bus, then the benefit of that bargain is that you have to accept the disclaimer language that's in there, even if you didn't see it. How can a party argue breach of contract? And I know they're going to say, well, it's an oral breach, but at the end of the day, they still accepted the benefit of the value of having the repairs done. And so our position is they have to accept to them the negative side that there's a disclaimer, which then eliminates the oral representations and the fraudulent misrepresentation claim. Let me say, let's assume for the moment that we accept the view, the district court's view, that they saw the disclaimer in the warranty packet. They argue, as I teased out here, that there is an additional basis under which they could claim that they did not reasonably rely. And I'd like to hear in a sort of concise fashion, what is your response to that? Do you agree that it is not determinative that they would, if we accept the view, that they read the disclaimer? That doesn't immediately dispose of that claim, does it? Well, the gold standard case says that you cannot reasonably rely on statements in light of contrary written information. And so if the warranty has, if the disclaimer language says that oral representations by a salesperson or a dealer, those are disclaimed. And if they're disclaimed in writing, how can you rely on them? And I think that's where the district court went with that argument that no reasonable individual could conclude that there was reasonable reliance here. Yes, but I thought that there was case law that has been talked about here, and at least that I had a chance to familiarize myself with in the run-up here, that suggested that there was a broader scope in determining how you would evaluate reliance. Well, and if you look at the totality of the facts in the broader scope, we have a sophisticated, we have a transportation company buying buses. We have the CEO of Elevated, Steve Fuller, who was very comfortable and happy with the research that he had done prior to ordering these buses. He has multiple conversations with Forest River salespeople. He should have known to examine the language of the contract. He admitted that he didn't have a lawyer review it. And so, my apologies, on a totality basis, he should have relied on or should have relied on the fact that there is language in there, that he had reviewed it, and the district court was correct in concluding there's reasonable reliance. There is one other basis, actually two basis, for affirming the entry of summary judgment. And Judge Holmes, you brought up the puffery issue and the fact that, you know, these are future promises, these statements about the buses are going to run. They're going to be good for that. I mean, at the end of the day, one bus had 170,000 miles. Second bus had 150,000 miles, and the third bus had 120,000 miles. And when I went through painstaking detail with their expert about the repairs that were completed, and I also would remind the court not to forget that we only provided a warranty for what I call the box of the bus, not the chassis. In your written limited warranty. Correct, correct, Judge, absolutely. That he's not relying on. But I went through Mr. Watt's latent defects or his issues that he identified with the bus. We went through every single one of them, and you can find them in the record at starting around 459 to 477. Fluid leaks, drive belt failure. I'm not going to do that today, but the point of my argument is, Mr. Watt did not know how long these buses were out of service due to any of these. Well, so what is the upshot of that argument? I thought you were going to say it's all puffery. The upshot of that argument is there was no breach. Forest River repaired the buses when a warranty claim was presented. Wasatch says, well, these buses were down. We call them down days in the business. These buses were down, and so that's attributable to these statements. The buses are going to be good for this route. Wasatch says the buses were down. So you're saying we should affirm summary judgment because he didn't breach the contract? I'm saying that the statements that he's relying on, that these buses would be good for that, for this route, that those statements, they cannot establish any fact that those statements were false. There's no evidence that these buses... You're saying that Heidi Smart, according to Mr. Fuller, stated to him, when told that there's going to be extreme elevation changes, extreme temperature changes in the route from Salt Lake to Blanding, and that this particular bus would be perfect for that, or good for that purpose. And then he has the same conversation with Phil Hayes, and he says, yes, this bus will be good for that. You're saying that that can't create, in the absence of a statute of frauds or being superseded by this written limited warranty, that can't create an oral warranty of fitness for a particular purpose in which there's at least a fact question about whether or not this bus was suitable, was fit for this particular purpose, this particular route. I'm out of time. May I answer? Putting aside the fact that it was disclaimed, if you look at the statements, there's no evidence in this record that Wasatch can establish that any of the down days or any of the damages were attributable directly to Forest River and not Freightliner. They've blurred that line. And my point here is that these statements that these buses were fit for the route, yes, those statements were made, but then if you really dive into the weeds, Wasatch does not establish that the down days were directly attributable Forest River. So they can't counter those statements. They can't say, well, those statements were not true. Okay. I appreciate it. They ran these buses. Right. Thank you. And we would request that the court affirm. Thank you. Your Honors, I'll be brief. I'll try to hit a couple of things that the questions were raised. Judge Holmes raised the issue of this idea that if you agree with the first two points, what about the third point? I referred the court to Webster v. J.P. Morgan Chase Bank that was ruled upon by the Utah Court of Appeals after the Gold Standard case, faulting the defendant for failing to acknowledge the factual distinction between Gold Standard in this case and concluding that given the circumstances, the discrepancies between the oral representations and the written contract do not alone establish the plaintiff's reliance was unreasonable as a matter of law. So, yes, you can, even if you consider that my client conclusively read those packets, which there is nothing on the record establishing that he did. But even if you went that way, we would still, reasonable reliance would be a question of fact for the jury on the fraud and misrepresentation claim. Second issue is opposing counsel mentioned that he asked about the limited warranty, but that was after there was a, and we refer this in page five of our reply brief, a detailed discussion of Wasatch's efforts to purchase the extended warranty, review the documents after all these problems existed. And then he asked that question. So you reviewed the limited warranty, and he says, yes, the last thing, the record is replete with so many problems with these buses. And yes, they've made a ton of repairs, but there's 180 days one of the buses record, the record has, that three weeks here, there, and everywhere. So to suggest that these were fit for this 350-mile bus route is at the very least disputed. All we're asking is for our day in court. There are disputed issues of fact regarding these issues, and we ask the court to reverse the lower court's decision. All right, thank you, counsel, for your fine arguments. Case is submitted.